EDWARD S. ORCHON, Esq. SBN 67039
LAW OFFICE OF EDWARD S. ORCHON
P.O. BOX 2743
WINNETKA, CA 91396

Tel (747) 224-1010
Email: orchonlaw@aol.com

Attorney for Plaintiff
**DENISE MARSICANO**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

DENISE MARSICANO, an individual
and on behalf of all that are similarly
situated,

            Plaintiff,

      vs.

BAC Home Loans Servicing, LP, a
California Limited Partnership, and
DOES 1 THROUGH 500, inclusive,

           Defendants.

**Case No.: 2:16-cv-06189-VAP (GJSx)**
Hon. Virginia A. Phillips
Ctrm. 780-Roybal Building

**PLAINTIFF'S OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A. MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION**

DATE:   OCTOBER 3, 2016
TIME:    2:00 p.m.
CTRM:   780 (Roybal)

## I.    INTRODUCTION

Countrywide Home Loans, Inc, [CHL] will arguably go down in history as one of the most prolific predatory lenders of all time.  This statement is beyond reproach.  No reasonable person could hold CHL to any level of esteem. Perhaps only Benedict Arnold in the annuls of

American history has a reputation worse than CHL.[1]

## II.    THE PLEADING STANDARD

Under the federal rules' notice pleading standard, a complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The complaint will survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In the instant matter defendant as successor-in-interest to CHL inherits the consequences of CHL conduct and is liable for its misdeeds.

/////////

/////

---

[1] October 6, 2008 California Attorney General website press release announced a "settlement with Countrywide ... that is expected to provide up to 8.68 billion of home loan and foreclosure relief nationally ... [their] *lending practices* turned the American Dream into a nightmare for ... families by putting them *into loans they couldn't **understand*** ... [or] ... ***afford***." (emphasis added) See also: United States, Arizona, Michigan, Oregon, Florida, and Illinois attorney general websites. Different jurisdictions, same basis story.

**ARGUMENT**

### III.   THE LENDER NAMED IN PLAINTIFF'S DEED IS A SHAM, NON-EXISTENT ENTITY LACKING LEGAL CAPACITY[2]

In paragraph "C" of the Definition Section of Plaintiff's March 27, 2007 Deed of Trust (the Deed) *the loan originator* falsely and fraudulently represented that

> 1) "**Lende**r is *AMERICA'S WHOLESALE LENDER*" [bold and capital letters in original, italic added];
>
> 2) "Lender is a *CORPORATION*" [capital letters in original, italic added]; and
>
> 3) "organized and existing under the laws of NEW YORK" [capital letters in original, italic added].  [Verified Complaint (VC) ¶ 11]

In reality, as shown by defendant's Request for Judicial Notice, in the case before the Court, defendant contends that America's Wholesale Lender (AWL) was a fictitious business name registered in Los Angeles County. [3]

---

[2] Knowingly representing a "suspended" artificial entity or concealing that fact from the court is sanctionable (*Palm Valley Homeowners Association, Inc. v. Design MTC,* (2000) 85 Cal. App. 4th 553, 560) and a possibly a misdemeanor.  [*Revenue & Tax Code* §19719]

[3] Apparently, like its predecessor interest, defendant adopts whatever business status for AWL that best suits its interests in response to a particular litigation.  *America's Wholesale Lender v. Pagano,* (2005) 87 Conn App. 474 479-480  (Footnote 2-in their complaint AWL alleged

In each instance the CAPITALIZED and *italicized* words/letters were "typed" by the defendant's predecessor-in-interest and intentionally inserted into blank spaces appearing in the Deed.  The Deed and note directed Plaintiff to make monthly payments to the original servicer CHL. [VC ¶ 7] Sometime thereafter CHL was acquired by defendant and BAC Home Loans Servicing, LP, (BAC) was substituted as the servicer. [VC ¶ 8] Plaintiff made all payments in a timely fashion. [VC ¶ 9]

At the time the Deed was recorded in March 2007, the New York State Department of Corporation did not list America's Wholesale Lender (AWL) as a New York corporation. [VC ¶ 12]  Also in March 2007 AWL was not registered in California as a foreign corporate entity. [VC ¶ 13] Prior to being acquired by defendant, CHL registered "America's Wholesale Lender" as a *service mark*[4]  [VC ¶ 17] and in 2005 filed the *service mark* as a "Fictitious Business Name" [LAFBN] in Los Angeles county.  On occasion it registered the *service mark/LAFBN* in counties throughout the United States to *avoid annual state fees* associated with foreign entities doing

---

contrary to deed that it was a Texas, not New York corporation.  ***All parties eventually agreed that AWL was <u>a trade name not a corporation</u> organized under the laws of any State.*** See also Central District Case No. 8:12-cv-00242-CJC-AN wherein, contra to this case, defendant contended AWL was *service mark,* not a "dba".

[4] Registration number 1872784-- 1/10/1995; **BUT UN-REVIVABLE** as continued use application *not filed* within grace period—4/3/2016.

business throughout the fifty (50) states. [VC ¶ 17]  Neither the *service mark* nor the 2005 Los Angeles county fictitious business filings have been renewed and both have been abandoned.[5]

Although the purpose of a fictitious name filing is to ensure disclosure of the true identity of the person operating under the fictitious name (*Hydrotech Systems Ltd. v. Oasis Waterpark*, (1991) 52 Cal. 3d 388) CHL perverted the purpose by neglecting to reference CHL in deeds as the lender or loan originator.  Instead as here, CHL used its *now expired* and *abandoned service mark* and *2005* Los Angeles County "dba" filing to hide from Plaintiff that she was dealing with a fictitious name and this practiced deception, intentionally left her with the undeniable impression that AWL was a New York corporation.

Designating a fictitious business as a corporation *is a violation* of *Business & Profession Code* § 17910.5 (a) and potential misdemeanor. (*Business & Profession Code* § 17930)  Taking the Deed's representations at face value there is no way to ascertain the identity of the loan originator to be anyone other than AWL.  Thus here and in millions of other security transactions CHL fraudulently represented that a now abandoned "*service mark*" or similarly abandoned *fictitious business name*, have the *power to*

---

[5] See Plaintiff's Request for Judicial Notice, Exhibits "1' and "2".

*sell or assign rights under notes and deeds*.[6]  It is this deception and fraud that defendant's arguments in support of their Motion attempt to wipe clean.

 *America's Wholesale Lender, Inc. (AWL, INC.)*[7] became chartered in New York *on December 16, 2008* [VC ¶ 12] or over one year after the Deed was executed.   CHL was not the incorporator.   Defendant does not dispute these facts. [8]

  On September 9, 2011 the Nevada Secretary of State chartered an *AWL, Inc.*[9] [VC ¶ 14] On *November 9, 2011*, the Nevada corporation *registered* as a foreign entity in California.  [VC ¶ 16]  *AWL, Inc.'s* business license expired on September 30, 2012 and *AWL, Inc.* is listed on the Nevada Secretary of State's web site as dissolved.  [VC ¶ 16]

  "In general, any person or entity has capacity to sue or defend a civil action in the California courts." *American Alternative*

---

[6] *California Civil Code* § 2932.5

[7] Italics and *"INC."* added to distinguish New York corporation from Lender identified in the Deed.

[8] *In February 2012* defendant as successor to CHL filed and prevailed in a **trademark infringement action** in the Central District of California against this New York Corporation.  Case No. 8:12-cv-00242-CJC-AN   The New York AWL sued by Bank of America never had any ties whatsoever to CHL.

[9] Italics and lower case *"Inc."* added to distinguish Nevada corporation from Lender identified in the Deed and New York corporation.

*Energy Partners II 1985 v. Windridge, Inc.* (1996) 42 Cal.

App4th 551, 559)

The court continued,

"The conclusion is the same if ... capacity is analyzed *under the*

*fictitious business name statutes.* Business and Professions

Code section 17910 provides that ... [persons] transacting

business in the state for profit under a fictitious business name

... *shall file* a fictitious business name statement. The code

*imposes a single penalty for failure to comply* with the filing

requirements: 'No person transacting business under the

fictitious business name contrary to the provisions of this

chapter ... *may maintain* any action *upon or on account* of any

*contract made, or transaction had, in the fictitious business*

*name* in *any court of this state* **until** the fictitious business

name statement has *been executed, filed, and published* as

required by this chapter....'" (citation omitted) (*American*

*Alternative Energy Partners II 1985 v. Windridge, Inc.* (1996)

42 Cal. App4th 551, 561-562) (emphasis added)

Having knowingly and intentionally inserted a false and deceptive

description of its business status in the Deed AWL lacked from the

inception the capacity to "maintain or act upon" contracts.  (*Alternative Energy Partners II 1985 v. Windridge, Inc.* (1996) 42 Cal. App4th 551, 562)

### A.   *AWARE THAT IT LACKED CAPACITY, AWL ATTEMPTED TO EMPLOY MERS TO ACT AS NOMINEE TO CONCEAL ITS SHAM AND NON-EXISTENT NATURE*

In order to avoid annual state corporate fees and conceal its identity and the identity of their agents for service of process, AWL employed MERS as nominee for the non-existent and fictional sham lender.  [VC ¶ 19] Paragraph "E" of the Deed states *inter alia,*

> "… MERS … is acting *solely as nominee* for the **Lender and Lender's successors and assigns**…." (bold capitalization in original) (bold italics emphasis added) [VC ¶ 20]

*California Civil Code* § 2932.5, and states *inter alia,*

> "Where **a power to sell** real property is given… in an Instrument **intended to secure** the payment of money, **the power …** may be exercised by the assignee **if** the assignment is **duly acknowledged and recorded.**" (emphasis added) [VC ¶ 21]

MERS is exclusively a membership organization of financial

Case 2:16-cv-06189-VAP-GJS   Document 11   Filed 09/11/16   Page 9 of 20   Page ID #:93

institutions.[10]  [VC ¶ 23]  Neither the *service mark nor the fictitious business name* was an actual financial institution or MERS member.  By using MERS, as an intermediary, the *service mark/fictitious business name* concealed and avoided direct interaction with county recorder's offices and possible discovery of the practice every time a transfer or sale of a note occurred.  [VC ¶ 24]

As AWL is and was a non-existent sham entity it was not and could not be a member of MERS; therefore MERS could not and cannot act in the capacity of a nominee of a non-existent sham entity or non-member.  [VC ¶ 26]  Further a non-existent shame entity can transfer no greater rights then it legally could own.  Thus any attempted sale or transfer of the note could transfer no greater right than that enjoyed by a non-existent sham entity and is therefore was of no force or effect.  [VC ¶ 27]  Other than a court no entity exists that has the power to void the note and remove the

---

[10] *Gomes v. Countrywide Home Loans, Inc.* (2011) 19 Cal. App. 4th 1149"cites *MERS v. Nebraska Department of Banking* (2005) 704 N.W. 2nd 784 with approval. The Nebraska Supreme Court held that, "… MERS merely *tracks … ownership …* and is paid for its services *through membership fees charged to its members …* the *lenders retain* the promissory notes and servicing rights … while MERS *acquires legal title* to the mortgage for recordation purposes … permitting *lenders to sell their interests … without recording* each transaction…." 704 N.W. 2nd at 787-788 (emphasis added)

cloud of the Deed from Plaintiff's title. [VC ¶ 27]

> B. *DEFENDANT'S MOTION TO DISMISS ADMITS THAT THE PLAINTIFF'S DEED CONTAINS DECEPTIVE AND FRAUDULENT REPRESENTATIONS*

In making this Motion defendant has necessarily argued and admitted that the Definition Section of the Deed misrepresents the ***"identity"*** not "designation" of the Lender and that the *clearly stated and inserted* typed representations are *in fact lies*; a deception practiced on millions of borrowers.  Thus before this Opposition was filed, defendant has already admitted as true one of the Complaint's two seminal allegations, that AWL *was not* the Lender *as stated* in the Deed; *was not* a corporation *as stated* in the Deed; and *was not* on March 20, 2007 organized and existing under the laws of New York State *as stated* in the Deed.  [¶¶ 99 & 100]

In doing so, and in complete contravention of the intentionally "typed" language, defendant, the claimed[11] successor-in-interest, wants this Court to accept *its novel "corrective" representation* that in actuality, CHL, not AWL, was *the lender* for the Deed *recorded in San Bernardino County*

---

[11] MERS is referenced in the Deed, however, only MERS members can avail themselves of MERS services and AWL, the *only identified* Lender, was not and is not a MERS member.

on March 28, 2007 as instrument 2007-0191037.[12]  What defendant's Motion attempts to accomplish with one stroke of the pen, is to re-write the history of this transaction ten years or so after the fact, i.e. delete from the Deed, the fraud and deception that was actively perpetuated on Plaintiff and millions of others.

The fact that the argument necessarily impeaches the unambiguous language found in the Deed is a basis for summarily denying the Motion to Dismiss.  The argument also establishes the practiced and intended deception to keep from State agencies and borrowers the identity of the predatory loan originator and/or its agent for service of process.

A further basis for summarily denying the Motion is defendant's Request for Judicial Notice and reliance on the *2005* CHL LAFBNS.  The filing, however, was ineffective as it states that the AWL name *was first used* on 3/15/01, almost *five years before defendants filed* the LAFBNS.

*California Business & Professions Code* §17910 states *inter alia*,

"Every person who regularly transacts business in this state for profit *under a fictitious business name* <u>shall do all</u> of the following:

---

[12] Please note that contrary to normal practice Defendant has not asked this Court to take Judicial Notice of Plaintiff's Deed of Trust.

(a) *File* a fictitious business name statement *in accordance* with this chapter <u>*not later than 40 days from the time*</u> the registrant <u>*commences to transact*</u> *such business.*" (emphasis added)

By defendant's own admission it has failed to comply with "all" aspects of Section 17910.  The filing occurred four (4) years; eight (8) months; and two (2) days after its first use [approximately one thousand seven hundred seven (1,707) days] or one thousand six hundred sixty-seven (1,667) days later then required by the section.   But if nonetheless this Court accepts[13] defendant's Request then the LAFBNS provides a significant admission *in support of the pleading's allegations* that *CHL knew*:

at the *time the deed was executed, that* the words appearing in the Deed and stating that AWL, the Lender, is "a corporation organized and existing under the laws of New York" *were deceptive and false, i.e. a lie.*

Yet far more persuasive is *defendant's actual knowledge* that the description of AWL's corporate status is deceptive and fraudulent. Defendant previously litigated against *AWL, INC.* in the Central District of

---

[13] It does not appear that the foundational elements as to authenticity have been complied with as the proffered LAFBNS does not appear to be a certified copy

California [8:12-cv-00242-CJC-AN] then claiming, as successor-in-interest to CHL, that AWL was its "*service mark*".[14]

Finally in accordance with the *Business & Profession Code*[15] the 2005 LAFBNS expired by operation of law in 2010.  Having requested this Court to take Judicial Notice of the 2005 filing, where are defendant's filings of the renewals of the LAFBNS that had to be filed in 2010 and 2015 in order to retain "exclusive"[16] use of the AWL fictitious name?  At the present time neither defendant nor CHL own the fictitious business name AMERICA'S WHOLESALE LENDER in Los Angeles County.

**IV.   WHEN THE NOTE WAS EXECUTED THERE WAS NO MEETING OF THE MINDS**

Defendant, as CHL's successor-in-interest, is shackled with CHL's history, business practices, reputation and attempt to *impersonate* a federal trademark as a New York corporation.  It must be emphasized that this is not a pristine *service mark* rather it is the last remnants of a defunct business synonymous with deceptive predatory practices and the most

---

[14] The *service mark* was abandoned by defendant earlier this year.
[15] Section 17920 (a)
[16] *California Business & Professions Code* §14411 states in relevant part, "The filing of any fictitious business name statement ... shall establish a rebuttable presumption that *the registrant has the exclusive right to use* as a trade name the fictitious business name, ... if the registrant is the *first to file* such a statement containing the fictitious business name *in that county* ...." (emphasis added)

destructive economic meltdown since the Depression.

Under *California Civil Code* §2920(a) a mortgage transaction is a contract.  On March 20, 2007 Plaintiff executed a promissory note (the note) with AWL.  [VC ¶ 5]

At all times prior to Plaintiff's closing, Tina Hamous orally represented to Plaintiff, [VC ¶ 55] as confirmed in writing in bold capital letters in the *note heading,* that the note was an "***INTEREST ONLY FIXED RATE NOTE***".  [VC ¶ 56] (Bold capitalization in original; italic and underling emphasis added)  Thus Plaintiff understood from the inception that her payments would remain constant for the term of the note.  [VC ¶ 56]

In order to form a valid and enforceable contract, a meeting of the minds is essential.  (1 *Corbin on Contracts* (1963 ed.) § 107, p. 478.)  A party is not bound by the terms of a contract to which she never consented.  *Brown v. California State Lottery Commission* (1991) 232 Cal. App. 3d 1335

> "California law is clear that there is *no contract until* there has
> been a *meeting of the minds* on *all material points* ... *Mutual*
> *intent is determinative* of contract *formation* because there is
> *no contract unless* the parties *thereto assent*, and *they must*

*assent to the same thing*, in the *same sense. Banner*

*Entertainment, Inc. v. Superior Court (Alchemy Filmworks,*

*Inc.*) (1998) 62 Cal.App.4th 348, 357-359 (emphasis added)

In the absence of Plaintiff and AWL understanding the note's terms in the

same manner and in the same sense no contract could be formed. As the

court concluded in *American Employers Group, Inc. v. Employment*

*Development Dept.* (2007) 154 Cal.App.4th 836, 847,

> "...***failure*** to reach a meeting of the minds on all material
>
> points ***prevents the formation*** of a contract ...." (emphasis
>
> added)

Thus sufficient facts are alleged for Plaintiff to state a claim for

rescission of the note and Deed.

## V.   DEFENDANT'S PRECESSOR-IN-INTEREST'S DECEPTIVE AND FRAUDULENT PRACTICES AND SCHEMES PREVENTED PLAINTIFF FROM DISCOVERING OR SUSPECTING HARM OR INJURY HAD OCCURRED

### A. *DEFENDANT'S ARGUMENT THAT PLAINTIFF'S CLAIMS ARE BARRED BY STATUTES OF LIMITATION IS FRIVILOUS*

Tina Hamous orally represented, as confirmed in writing in bold

capital letters in the *note heading,* that the note was an "***INTEREST***

***ONLY* FIXED RATE NOTE**". [VC ¶ 55]  Thus Plaintiff had no reason not

to believe that her monthly payments would remain constant for the term

of the note.  [¶ 70] Plaintiff had no reason to suspect anything was amiss until informed that the payment amount was changing, ten (10) years after the representations were made and the note and the Deed were signed.

### B. UNTIL THE PASSAGE OF TEN YEARS PLAINTIFF HAD NO REASON TO SUSPECT THAT THE FACTUAL REPRESENTATIONS WERE UNTRUE[17]

In *Nogart v. Upjohn, Co.*, (1999) 21 Cal. 4th 383, 397-398, the Supreme Court relying upon *Jolly v. Eli Lily & Co.* (1988) 44 Cal. 3d 1103, *Gutierrez v. Mofid* (1985) 39 Cal. 3d 892, 897 and *Sanchez v. South Hoover Hospital* (1976) 18 Cal. 3d 93 held that,

> "the plaintiff *discovers* the cause of action *when* he ... *suspects a factual basis*, '... that someone has done *something wrong'* to him (citation omitted) 'wrong' ... *not in any technical sense*, *but* rather in accordance with its *'lay understanding'* (citation omitted) ...."
>
> (emphasis added)

In the instant case until Plaintiff was informed, contrary to the representations made, that the monthly payments would be increasing in the tenth year, she had no reason to suspect a factual basis for someone having done something wrong to her, i.e. that a misrepresentation had

---

[17] The statutes only affect remedies, *Chase Sec Corp. v. Donaldson* (1945) 325 U.S. 304; *Mitchell v. Automobile Owners Indem. Underwriter* (1941) 19 Cal. 2d 1, 4

occurred and that the note was anything other than an ***"INTEREST***

***ONLY* FIXED RATE NOTE"** as orally and in writing represented.

     *Vaca v. Wachovia Mortgage Corp.* (2011) 198 Cal. App. 4th 737

provides an example of when *knowledge* causes a claim to start accruing.

The court held,

> "... Aggrieved parties generally need not know *the exact manner*
> in which their injuries were '*effected* ...' Plaintiffs' causes of action
> *accrued [when]... she suspected 'someone ha[d] done something*
> *wrong' ....*" *Vaca v. Wachovia Mortgage Corp.* (2011)198
> Cal.App.4th 737, 743-744 (emphasis added)

At the time Plaintiff signed the note she believed based upon the oral and

written representations that the note was a fixed rate interest *only* note.  As

the heading confirmed the oral representation and *did not disclose the note*

*was actually* a

**FIXED RATE INTEREST ONLY NOTE**
***FOR ONLY* THE FIRST TEN YEARS,**

Plaintiff had no reason to question the oral or written representations.

Plaintiff executed the note believing the terms were as represented.  But for

this mistaken belief Plaintiff would not have executed the note and Deed.

Until Plaintiff was informed that the payment amount was increasing,

Plaintiff had no reason to suspect that the representations and her

understanding based upon those representations were untrue.

## VI.   A VIABLE CLAIM FOR VIOLATION OF BUSINESS AND PROFESSION CODE IS ALLEGED

California's unfair business practice law does not prohibit anything; it simply provides a definition of what constitutes "unfair competition." Section 17200 states,

> "…unfair competition *shall mean and include* unlawful, unfair or fraudulent business practice and unfair deceptive untrue or misleading advertising …." (emphasis added)

The term "competition" is a misnomer as the Section's main purpose is "consumer protection." (*Barquis v. Merchants Collection Association* (1972) 7 Cal. 3d 94, 111)  Additionally actual injury is not required and the section imposes strict liability. (*People v. Cappuccio, Inc.* (1988) 204 Cal. App. 3d 750)  To survive a Motion to Dismiss the complaint need only allege a pattern *or practice related to business*. (*Barquis v. Merchants Collection Association* (1972) 7 Cal. 3d 94, 111)

"Business" is defined as "[e]verything about which one can be employed" and "synonymous with 'calling, occupation, or trade engaged in for the purpose of making a livelihood or gain.'" (*Burks v. Poppy Construction Company* (1962) 57 Cal. 3d 463, 468)

The Eleventh Claim for violation of *Business and Profession Code* §17200 alleges that defendants engaged in not less than six (6) business practices. Therefore the acts described in the Complaint [¶¶ 1 through 33; 39 through 49; 55 through 60] and the Eleventh Claim constitute unfair business practices as defined by the Section.

## CONCLUSION

Therefore for all the reasons stated herein Defendant's Motion to Dismiss should be denied.

Dated: September 11, 2016

LAW OFFICE OF EDWARD S. ORCHON

EDWARD S. ORCHON, Esq.
Attorney for Plaintiff
**DENISE MARSICANO**

# PROOF OF SERVICE

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles,  State of California. My business address is P.O. Box 2743 Winnetka, Ca. 91396.

On September 11, 2016  I served true copies of the following document(s):

**PLAINTIFF'S OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A. MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION**

on the interested parties in this action as follows:

MATTHEW A. GARFINKLE (State Bar No. 264730)
maf@severson.com
SEVERSON & WERSON
A Professional Corporation
The Atrium
19100 Von Karman Avenue, Suite 700
Irvine, California 92612

MARK JOSEPH KENNEY (State Bar No. 87345)
mjk@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111

## BY CM/ECF ELECTRONIC FILING:

With the Clerk of the Court and on participants in this case who are registered CM/ECF users. Non-registered participants will be served by U.S. Mail

Executed on September 11, 2016 at Winnetka, Ca.

I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct. I declare that I am  a member of the bar of this Court.

*/s/EDWARD S. ORCHON*
EDWARD S. ORCHON, declarant